1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         NORTHERN DISTRICT OF CALIFORNIA
10                              San Francisco Division
11      M.E.,                                 Case No. 24-cv-03641-LB
12                  Plaintiff,                **ORDER REMANDING CASE**
13           v.                               Re: ECF No. 24
14      MARTIN O'MALLEY, et al.,
15                  Defendants.
16

17                                  **INTRODUCTION**

18          The plaintiff, M.E., who was found disabled as of June 1, 2002, seeks judicial review of the

19   Commissioner's determination that her disability ceased as of November 2013.[1] She contends that

20   the ALJ's determination — that she had the residual-functional capacity (RFC) to work — was not

21   supported by substantial medical evidence, and the ALJ erred by discounting the plaintiff's account

22   of her continued disability.[2] The matter is submitted for decision without oral argument. Civil L.R.

23   16-5. The court remands for further administrative proceedings.

24
25
26
     _____
27   [1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations
     are to the ECF-generated page numbers at the top of documents.
28   [2] Pl.'s Br. – ECF No. 24 at 5–19.

ORDER – No. 24-cv-03641-LB

United States District Court
Northern District of California

1

## STATEMENT

2     On October 3, 2003, the plaintiff applied for Title II benefits and was found to be disabled

3  beginning June 1, 2002.[3] On November 21, 2013, the Commissioner determined that the

4  plaintiff's disability ceased as of November 2013.[4] The Commissioner denied reconsideration on

5  June 5, 2014.[5] Following a de novo hearing, an ALJ issued an unfavorable decision on June 22,

6  2016.[6] The Appeals Council denied the plaintiff's request for review on November 17, 2016.[7] The

7  plaintiff timely appealed the decision, and this court remanded pursuant to the parties' stipulation.[8]

8     On remand, an ALJ issued an unfavorable decision on October 31, 2018.[9] The Appeals

9  Council remanded to an ALJ, who issued a partially favorable decision after a hearing.[10] The

10 Appeals Council remanded again, and the ALJ issued an unfavorable decision on March 24,

11 2024.[11] That decision became the final decision of the Commissioner on the sixty-first day. 42

12 U.S.C. § 405(h). The plaintiff timely filed this action on June 17, 2024.[12] All parties have

13 consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[13]

14

15

## GOVERNING LAW

16     Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

17 Commissioner if the claimant initiates a suit within sixty days of notice of the decision. The

18

19 _____

20 [3] AR 93. Administrative Record (AR) citations refer to the numbers at the bottom right of the pages.

   [4] AR 110–13.

21 [5] AR 114, 138–40.

22 [6] AR 12–34 (decision), 35–75 (transcript).

23 [7] AR 1–11.

   [8] AR 3345–50, 3362–68.

24 [9] AR 3410–36.

25 [10] AR 3441–43 (May 2019 Appeals Council remand), 3446–80 (December 2019 partially favorable decision), 3578–618 (May 2016 transcript).

26 [11] AR 2287–325 (March 2024 decision), 3290–312 (November 2023 transcript), 3485–89 (November 2021 Appeals Council remand).

27 [12] Compl. – ECF No. 1.

28 [13] Consents – ECF Nos. 6–7.

court's review is limited to whether substantial evidence supports the Commissioner's decision and whether the decision comports with relevant legal standards. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla," but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

An ALJ determines the continued disability status of claimants via an eight-step analysis. 20 C.F.R. § 404.1594(f)(1)–(9).

> **Step One:** Is the claimant presently working in a substantially gainful activity? If so, the disability will be found to have ended. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1594(f)(1).
>
> **Step Two**: Does the claimant's impairment(s) meet or equal the criteria in any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (a.k.a., "the Listings"; 20 CFR § 404.1520(d) (2012)). If so, the claimant continues to be disabled, and the evaluation stops. If not, proceed to step 3. *See* 20 C.F.R. § 404.1594(f)(2).
>
> **Step Three**: Has there been medical improvement of the claimant's impairment(s) since the comparison point decision? If medical improvement has occurred, proceed to step 4. If medical improvement has not occurred, proceed to step 5. *See* 20 C.F.R. § 404.1594(f)(3).
>
> **Step Four**: If there has been medical improvement, is it related to the ability to work? If the medical improvement is related to the ability to work, proceed to step 6. If the medical improvement is not related to the ability to work, proceed to step 5. *See* 20 C.F.R. § 404.1594(f)(4).
>
> **Step Five**: If there has been no medical improvement or the medical improvement is not related to the ability to work, do any of the exceptions to the medical-improvement standard apply? If none of the exceptions apply, the claimant will be found disabled. If an exception applies, proceed to step 6. *See* 20 C.F.R. § 404.1594(f)(5).
>
> **Step Six**: Is the claimant's impairment or combination of impairments severe? In other words, does the claimant's impairment or combination of impairments significantly limit the claimant's ability to do basic work activities? If not, the claimant's disability will be found to have ended. If the claimant's impairment is severe, proceed to step 7. *See* 20 C.F.R. § 404.1594(f)(6).
>
> **Step Seven**: Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If the claimant can do his or her past relevant

work, the disability will be found to have ended. If the claimant cannot do her/his past relevant work, proceed to step 8. *See* 20 C.F.R. § 404.1594(f)(7).

**Step Eight**: Considering the claimant's RFC, age, education, and work experience, is the claimant able to make an adjustment to other work? If so, the claimant's disability will be found to have ended. If not, the claimant will be found to continue to be disabled. *See* 20 C.F.R. § 404.1594(f)(8).

When a recipient of disability benefits challenges the cessation of benefits, the issue is whether the recipient's medical requirements have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Marrs-Espinoza v. Colvin*, No. 5:15-cv-00921-PSG, 2015 WL 1224831, at *3 (N.D. Cal. Mar. 17, 2015). The continued entitlement to benefits depends on a two-part test: (1) whether there has been any medical improvement in the recipient's impairments, and if so, (2) whether the medical improvement is related to her ability to work. 20 C.F.R. § 404.1594(b); *Marrs-Espinoza*, 2015 WL 1224831, at *3.

Under part one, "medical improvement" is "any decrease in the medical severity of the individual's impairments which was present at the time of the most recent favorable medical decision that the individual was disabled or continued to be disabled." *Marrs-Espinoza*, 2015 WL 1224831, at *3 (cleaned up) (quoting *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(1))). "A determination that there has been a decrease in medical severity must be based on changes (improvements) in the symptoms, signs and/or laboratory findings associated with the individual's impairment. If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding increase in the [individual's] functional capacity to do basic work activities." *Id.* (cleaned up) (quoting *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(1), (b)(3))).

Under part two, the focus is on whether the individual has the ability to engage in substantial gainful activity. *Id.* (citing *Kennedy*, 247 F. App'x at 765). In disability determinations, the claimant has the burden of proving disability. *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir. 1983); *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982). In the cessation analysis, once a claimant has been found to be disabled, there is a presumption of continuing disability. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983); *Patti v. Schweiker*, 669 F.2d 582, 586–87 (9th Cir. 1982). The

1    Commissioner has the burden of producing evidence sufficient to rebut this presumption of

2    continuing disability. *Murray*, 722 F.2d at 500; *see Marrs-Espinoza*, 2015 WL 1224831, at *3 (the

3    ultimate burden of proof lies with the Commissioner in termination proceedings) (quoting

4    *Kennedy*, 247 F. App'x at 765 (citing 20 C.F.R. § 404.1594(b)(5), (f)(7))). An increase in a

5    claimant's functional capacity leads to a cessation of benefits only if, because of the increase, the

6    claimant can perform past work or other work that exists in significant numbers in the national

7    economy. *Marrs-Espinoza*, 2015 WL 1224831, at *3 (citing 20 C.F.R. § 404.1594(f)(7)).

8        The ALJ is responsible for resolving conflicts and ambiguities in medical testimony. *Garrison*

9    *v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). The ALJ must consider the entire case record,

10   including each medical opinion, together with the rest of the relevant evidence. 20 C.F.R. §

11   416.920b. "A reviewing court must consider the entire record as a whole and may not affirm

12   simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630

13   (9th Cir. 2007) (cleaned up).

14       For disability determinations through March 26, 2017, Social Security regulations distinguish

15   among three types of physicians: treating physicians, examining physicians, and non-examining

16   physicians, who only review medical records. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).[14]

17   A treating physician's opinion carries more weight than an examining physician's, which carries

18   more weight than a non-examining physician's. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th

19   Cir. 2001). The Social Security Administration favors opinions of treating physicians over non-

20   treating physicians because they are employed to cure and have a greater opportunity to know and

21   observe their patients. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527). The conclusions of the

22   treating physician are not necessarily conclusive. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595,

23   600 (9th Cir. 1999). But they are given controlling weight if they are "well-supported by

24   medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the

---

[14] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, governs here.

United States District Court
Northern District of California

1    other substantial evidence in the claimant's case record." *Trevizo v. Berryhill*, 871 F.3d 664, 675

2    (9th Cir. 2017) (cleaned up) (quoting 20 C.F.R. § 404.1527(c)(2)).

3         To reject the uncontradicted opinions of a treating or examining doctor, an ALJ must provide

4    clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at

5    830–31. If the opinion of a treating or examining physician is contradicted, the ALJ must provide

6    specific and legitimate reasons supported by substantial evidence in the record. *Id.* The opinions of

7    non-treating or non-examining physicians may serve as substantial evidence when they are

8    consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*,

9    278 F.3d 947, 957 (9th Cir. 2002). The ALJ meets this burden by summarizing the facts and

10   conflicting clinical evidence thoroughly, stating his interpretation of them, and making findings.

11   *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). He errs when he rejects a medical

12   opinion or assigns it little weight without explanation, without explaining why another medical

13   opinion is more persuasive, or criticizing it "with boilerplate language that fails to offer a

14   substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. Factors relevant to

15   evaluating a medical opinion include the amount of relevant evidence that supports the opinion,

16   the quality of the explanation, the consistency of the medical opinion with the record, and the

17   specialty of the opining physician. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)–(6)).

18   An ALJ need not agree with everything in the medical opinion and can consider some portions

19   less significant than others. *Magallanes*, 881 F.2d at 753.

20

21                              **ADMINISTRATIVE PROCEEDINGS**

22        The ALJ conducted the eight-step analysis under 20 C.F.R. § 404.1594(f)(1)–(9) and

23   determined that the plaintiff was no longer disabled.[15]

24        At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity.[16]

25

26

27   [15] AR 2310.

28   [16] AR 2295.

United States District Court
Northern District of California

1     At step two, the ALJ found that the plaintiff did not have an impairment or impairments that

2     met or equaled a listing.[17]

3     The physical limitation of musculoskeletal disorders in listings 1.15, 1.16, and 1.18 was not

4     met because there was no medical documentation of at least one of the following: (1) a

5     documented need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated

6     mobility device involving the use of both hands; (2) an inability to use one upper extremity to

7     initiate, sustain, and complete work-related activities involving fine and gross movements *and* a

8     documented need for a one-handed, hand-held assistive device involving the use of one hand or a

9     wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both

10    upper extremities to the extent that neither can be used to independently initiate, sustain, and

11    complete work-related activities involving fine and gross movements.[18] The record did not

12    establish an inflammatory bowel disease or anemia.[19] Obesity in combination with other factors

13    did not medically equal a listing.[20]

14    There was previous treatment for major depressive disorder and opiate dependence, but the

15    evidence did not establish a severe impairment during the relevant period, considering the four

16    broad functional areas in the disability regulations evaluating mental disorders and in section

17    12.00C of the Listing of Impairments (known as the "paragraph B criteria").

18    The first functional area is understanding, remembering, or applying information. The plaintiff

19    had a mild limitation: she reported struggling with poor memory but also said that she did not need

20    special reminders to take medicine or attend to her personal needs and grooming.[21]

21    The second area is interacting with others. The plaintiff had a mild limitation, testifying that she

22    did not engage in many social activities but also reporting that she enjoyed chatting on the phone,

23

24

---

25    [17] AR 2296.

26    [18] *Id.*

      [19] AR 2296–97.

27    [20] AR 2297.

28    [21] AR 2297–98.

United States District Court
Northern District of California

visiting friends, and shopping, and she attended church weekly and sometimes attended parties. Medical examiners described the plaintiff as pleasant, cooperative, alert, and oriented.[22]

The third area is concentrating, persisting, or maintaining pace. The plaintiff had a mild limitation, denying any significant problems paying attention, stating that she finished tasks, and performing basic tests such as serial 3s and 7s, spelling "Mundo," and calculating basic math. She had only mildly compromised attention and concentration during the exam, and medical records had no clinical observations of deficits in this area.[23]

The fourth area is adapting or managing oneself. The plaintiff had a mild limitation, relying on others for assistance with the tasks of daily living but also managing her personal care independently, including meals, light chores, shopping, driving, and medical appointments. She had normal grooming and hygiene, intact judgment, and did not display signs of emotional lability or agitation in treatment.[24]

At step three, the ALJ found that medical improvement had occurred as of November 30, 2013.[25]

The plaintiff no longer met the listing for affective disorder from November 30, 2013, through the date last insured on December 31, 2015, considering the applicable functional areas.[26]

The first functional area is activities of daily living. In the past, she had suicidal thoughts and social withdrawal, stayed in bed all day due to depression, and was placed on a psychiatric 5150 hold in February 2010 following a reported overdose. Evidence since the cessation date showed medical improvement and only mild limitation. During the November 2023 consultative psychological exam, the plaintiff denied additional psychiatric admissions and reported that she performed all activities of daily living independently, including shopping, taking public transportation, preparing simple meals, performing household chores, and attending medical

---

[22] AR 2298.

[23] *Id.*

[24] *Id.*

[25] AR 2298–300.

[26] AR 2298.

appointments. Treatment records showed normal mental-status exams and a depressive disorder in full remission as of September 2013.[27]

The second functional area is social functioning. Previously the plaintiff reported thoughts of suicide and anhedonia, among other symptoms of depression, and presented as depressed. The evidence since the cessation date showed medical improvement and no more than mild limitation, as the plaintiff engaged in social activities (summarized in step two).[28]

The third area is concentration, persistence, or maintaining pace. Previously the plaintiff had low energy and motivation and trouble sleeping and concentrating.[29] The limitation now was mild (as summarized in step two).[30]

The fourth functional area is repeated episodes of decompensation, each of extended duration. The record since November 2013 showed no further holds, admissions, or other evidence.[31]

As to the abdominal pain, hernias, and resulting surgeries, the plaintiff had no further surgeries (other than an uncomplicated repair surgery), reported improved pain symptoms, and had improved physical abilities, including walking for exercise and the ability to do chores.[32]

The ALJ concluded that the evidence demonstrated a decrease in the medical severity of the physical and mental impairments present since the comparison-point decision.[33]

At step four, the ALJ found that the plaintiff's medical improvement was related to her ability to work because she no longer met or medically equaled her previously qualifying listings, 5.07 or 12.04.[34] The ALJ thus did not make a determination at step five and moved to step six.

At step six, the ALJ found that as of November 30, 2013, the plaintiff's impairments were severe and caused more than minimal limitation in her ability to perform work activities. Her

_____

[27] AR 2299.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] AR 2300.

[33] *Id.*

[34] *Id.*

1   severe medically determinable impairments were "degenerative joint disease of the lumbar spine,

2   recurrent ventral hernia status-post mesh repair, mild obesity status-post gastric bypass,

3   osteoarthritis of the bilateral knees, plantar calcaneal spur and hammertoe deformities of the left

4   foot, and iron-deficiency anemia." They caused more than minimal limitation in the plaintiff's

5   ability to perform basic work activities.[35] The ALJ considered evidence of right-shoulder and neck

6   pain, but the evidence did not establish a severe shoulder or cervical spine impairment or that the

7   impairment more than minimally limited the plaintiff's ability to perform basic work activities.[36]

8        The plaintiff's asthma was non-severe.[37]

9        At step seven, the plaintiff had no prior work history.[38]

10       At step eight, the ALJ determined that the plaintiff had the residual-functional capacity to

11  conduct other work (as defined in 20 C.F.R. § 404.1567(b)) that involved (1) lifting and carrying

12  twenty pounds occasionally and ten pounds frequently, (2) standing for six hours and walking for

13  four in an eight-hour workday, (3) pushing or pulling as much as she could carry, (4) climbing

14  ramps and stairs occasionally (but never ladders, ropes, or scaffolds), and (5) balancing, stooping,

15  kneeling, and crouching occasionally (and rarely crawling).[39] The ALJ followed the two-step

16  process, (1) first determining whether there was an underlying medical impairment — that is, an

17  impairment that can be shown by medically acceptable clinical or laboratory diagnostic techniques

18  — that reasonably could be expected to produce the plaintiff's pain or other symptoms, and (2) if

19  there is that impairment, evaluating the intensity, persistence, and limiting effects of the symptoms

20  to determine the extent that they limited the claimant's ability to do basic work functions.[40]

---

[35] AR 2301.

[36] Id.

[37] Id.

[38] AR 2308.

[39] AR 2301–02 (plaintiff should avoid work at unprotected heights or around heavy machinery and concentrated exposure to temperature extremes, humidity, dust, odors, fumes, and other pulmonary irritants).

[40] AR 2302.

1    The ALJ considered the plaintiff's testimony that she could not work due to stomach pain and

2    a history of surgeries (and had an upcoming surgery). She could fold laundry but not do household

3    chores. She could lift a cup of water but not a gallon of milk. She had foot surgeries and could not

4    walk, stand, sit, or lie down for very long. The ALJ found that the medically determinable

5    impairments could have reasonably been able to produce the alleged symptoms but that the

6    symptoms were not entirely consistent with the objective medical and other evidence.[41]

7    The ALJ considered the primary allegation of recurrent abdominal hernia. The evidence did

8    not support the alleged severity and instead — including the plaintiff's surgical history and

9    objective fundings — supported her ability to do light work. The ALJ cited examining physician

10    Eugene McMillan, M.D.,[42] who reviewed the Kaiser records, conducted a physical exam, and

11    opined about functional limitations.[43] Dr. McMillan observed scarring consistent with the

12    surgeries and a 3.5-inch reducible hernia. The ALJ noted the uncomplicated repair surgery in

13    March 2015 and the plaintiff's recovery. In finding the plaintiff limited to four hours of walking in

14    an eight-hour day, he considered evidence of knee osteoarthritis, lumbar spine degeneration, and

15    the more recent diagnosis of left-foot hammertoes and plantar calcaneal spur but concluded that

16    they did not support a further limitation in walking or standing.[44]

17    The ALJ observed that the record had few complaints of back pain, modest objective findings,

18    and conservative treatment. Dr. McMillan observed a reduced range of motion, including seventy-

19    degrees flexion, but identified the plaintiff's stable gait, lack of an assistive device, normal

20    neurologic findings and lower-extremity motor strength, and ability to get on and off the

21    examination table. The plaintiff denied radicular pain or back pain two months later in December

22    2013.[45] A June 2014 examination showed full range of back motion without pain, with no

23    tenderness or spasm, and later treatment records showed no treatment for low-back pain or clinical

24

25    [41] Id.

26    [42] AR 2303.

     [43] AR 1072, 1074–75.

27    [44] AR 2303.

28    [45] Id.

United States District Court
Northern District of California

observations supporting a greater limitation than that assessed in the RFC.[46] The record had few complaints of foot pain before the date last insured. The plaintiff had right-heel tenderness but no pain. She reported new left-foot pain in November 2015, after daily trips to the gym. A November 2015 X-ray showed a plantar calcaneal spur and hammertoes. The plaintiff reported minimal improvement and subsequent right-foot pain a year later, but the treatment records did not show objective findings consistent with her alleged limitations.[47]

The ALJ considered the evidence of anemia, attributable to the gastric-bypass surgery and dysmenorrhea. The plaintiff was treated with blood work, iron, and supplements, resulting in improvement. The plaintiff sought treatment for dizziness in October 2014 and felt weak in December 2014, but examinations throughout the period indicated that she presented well and without heartbeat irregularities, including denying fatigue, weakness, and an irregular heartbeat in December 2015. She went to the gym three to four times a week, using the treadmill and elliptical.[48]

The ALJ gave significant weight to the medical opinion of non-examining physician Ken Berger, M.D., who testified at the November 2, 2023, hearing, that the plaintiff's medical issues did not show a listing-level impairment and that she could lift twenty pounds occasionally, ten pounds frequently, stand for three hours at a time (for six hours total), and could occasionally climb stairs, stoop, kneel, and crouch (but never crawl or be on ladders or scaffolds or operate heavy machinery).[49] The ALJ gave partial weight to Dr. McMillan's testimony, who opined that the plaintiff could lift and carry ten pounds occasionally, stand and walk for at least six hours, sit for six hours, and occasionally stoop, kneel, and crouch. The lifting limitation was not fully supported by the record, given the lack of complaints or treatment for recurrent hernias before December 2014, few clinical findings of tenderness or pain, and an uncomplicated surgery in March 2015. Dr. McMillan observed decreased range of motion in the lumbar spine but not positive neurologic finding, and a June 2014 examination showed a full range of motion. He

---

[46] AR 2303–04.

[47] AR 2304.

[48] *Id.*

[49] *Id.*

United States District Court
Northern District of California

1    observed 4/5 right-shoulder strength and modestly reduced range of motion, but the record did not

2    elsewhere reflect complaints or similar findings or have imaging studies to confirm a shoulder

3    pathology. The available imaging of the cervical spine in April 2015 did not show arthritis.[50]

4        The ALJ gave partial weight to the testimony of non-examining consultants Joan Bradus,

5    M.D., and Beverly Morgan, M.D. Dr. Bradus found significant medical improvement and opined a

6    capacity for light work with postural limitations, predominantly occasional due to the recurrent

7    hernias and decreased range of motion in the lumbar spine, with a limitation to frequent reaching

8    with the right upper extremity due to right-shoulder tendonitis. Dr. Morgan affirmed that opinion

9    and added a limitation of climbing ramps and stairs occasionally. The ALJ gave great weight to

10   their opinions except the reaching limitation, which was unsupported by the record.[51]

11       The ALJ gave little weight to non-examining consultant Kweli Amusa, M.D., who testified at

12   the May 2016 hearing that the plaintiff was limited to lifting ten pounds occasionally and less than

13   ten pounds frequently, could stand, sit, or walk for six hours, and perform all postural activities

14   occasionally. The ALJ determined that the evidence did not support the lifting and carrying

15   limitation.[52]

16       The ALJ gave little weight to the opinion of non-examining consultant Y. Ruo, M.D., who

17   assessed the plaintiff's subsequent application for Title II benefits filed November 29, 2016, and

18   opined a limitation to sedentary exercise. This was overly restrictive for the reasons articulated

19   about Drs. McMillan and Amusa. The limitation of two hours standing and walking was

20   inconsistent with the opinions of Drs. Berger, Bradus, Morgan, and McMillan and unsupported by

21   the examination findings.[53]

22

23

24

25   ───────────────

     [50] AR 2305.

26   [51] *Id.* Non-examining physician M. Monando, M.D., conducted a case analysis on reconsideration and
     assessed a light RFC. AR 1619–24.

27   [52] AR 2305–06.

28   [53] AR 2306.

1     The ALJ gave no weight to the 2019 opinions of treating physicians Rik Balkrishna Smith,

2   M.D., or Jessica Lickiss, D.P.M.[54] Both concluded that the plaintiff could not engage in

3   substantial gainful activity.[55] The ALJ held that Dr. Smith's opinion did not address the relevant

4   period and was about an issue reserved to the Commissioner. Dr. Lickiss had known the plaintiff

5   for two years, which meant that she had no first-hand knowledge of the relevant period. Her

6   opinion — the plaintiff had pain and limitation in the foot and may be permanently disabled — did

7   not address the nature of the limitation, did not address the period at issue, and was on an issue

8   reserved to the Commissioner.[56]

9     The ALJ gave no weight to the 2021 opinion of Adolfo Romero-Duran, M.D., who opined that

10   the plaintiff has constant pain that does not allow her to do activities of daily living. The date was

11   after the date last insured and did not address the relevant period.[57]

12     The March 2015 notes from the hernia surgery limited lifting to ten pounds. The ALJ gave

13   limited weight to this opinion because it involved a temporary period of recovery, follow-up visits

14   showed recovery and no weakness, and no lifting restrictions during follow-up visits.[58]

15     The ALJ gave significant weight to the opinion of psychological examiner Aparna Dixit, Psy.D.,

16   who found no more than a mild limitation in any work-related area of any mental functioning, for

17   the reasons summarized in the step-two analysis.[59] He gave significant weight to the opinions of

18   non-examining psychological consultants D. Lucila, M.D., and M. Morando, M.D., who found no

19   significant mental impairment. He gave partial weight to the June 2014 and October 2015 opinions

20   of Barrett Levine, M.D., an addiction psychiatrist who treated the plaintiff for chronic pain and

21   opiate dependence, including great weight to his opinion that the plaintiff was no longer disabled

22   from a psychiatric point of view because the medical record and the plaintiff's reports supported the

---

[54] *Id.*

[55] AR 8269, 8271.

[56] AR 2306.

[57] *Id.*

[58] *Id.*

[59] AR 2306–07.

United States District Court
Northern District of California

opinion. He gave little weight to his opinion about the plaintiff's physical limitations, including the opinion that she clearly could not lift anything due to hernias, as unsupported by the medical record and outside his expertise.[60] He gave substantial weight to the 2015 opinions of Neli Geonetta, Ph.D., and Marta Moreno, M.D., who opined that the plaintiff had no medical limitations, on the ground that they were consistent with the assessments of Dr. Levine, Dr. Dixet, and the state psychological consultants, who did not find severe mental limitations within the meaning of the regulations. Dr. Moreno was the plaintiff's primary-care physician and did not opine on her physical capacity.[61] The ALJ gave little weight to the opinions of April Young, Ph.D., who performed a psychological assessment, because it was outside the relevant time period. He gave little weight to Irwin Shapiro, M.D., who testified in 2006 and did not review later evidence. He gave no weight to the opinion of non-examining consultant G. Goldberg, Ph.D., the state-agency psychological consultant who reviewed the November 2016 application for Title II benefits as inconsistent with the record.[62]

The ALJ considered the Global Assessment of Functioning scores, which were consistent with mild symptoms, and dismissed them as having limited probative value. He gave limited weight to the plaintiff's husband, who was not an acceptable medical source and thus not entitled to deference, who reported about the plaintiff's difficulties, including standing, walking, memory, and task completion and her ability to prepare meals, take her daughter to school, clean, walk, drive, shop, go to church, and perform personal care. This suggested greater capacity than the plaintiff alleged. The ALJ contrasted Dr. Berger's medical opinion, which was supported by the weight of the evidence.[63]

The ALJ concluded that the plaintiff was not disabled from November 30, 2013, through the date last insured on December 31, 2015, and had the RFC to perform a significant number of jobs in the national economy.[64]

---

[60] AR 2307.

[61] AR 2307–08.

[62] AR 2308.

[63] *Id.*

[64] AR 2309–10.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ANALYSIS

The two issues are whether the ALJ's RFC was supported by substantial medical evidence and whether the ALJ properly rejected the plaintiff's testimony about her symptoms.[65] The court remands for further administrative proceedings.

## 1. **Residual-Functional Capacity**

The ALJ credited opinion evidence by giving significant weight to non-examining consultant Dr. Berger, partial weight to examining consultant Dr. McMillan and non-examining consultants Dr. Bradus and Dr. Morgan, little weight to Drs. Amusa and Ruo, and no weight to treating physicians Smith and Lickiss. He did not consider the opinion of Dr. Monando, who conducted a case analysis on reconsideration and assessed a light RFC.[66] He rejected Dr. McMillan's exertional limitation on the ground that it was not supported by the medical records, which was not a sufficient explanation.[67] The court remands for further administrative proceedings.

Dr. McMillan examined the plaintiff to reach his conclusion of a sedentary RFC. The ALJ rejected that conclusion, and the same conclusions by other doctors (including Drs. Amusa and Ruo), as unsupported by the medical records. The ALJ did not explain why his review of medical records outweighed the findings from Dr. McMillan's examination. The ALJ predicated his decision on Dr. Berger, who did not identify the severe medical impairment of degenerative joint disease of the lumbar spine.[68] Dr. Berger also reviewed four exhibits, which could be the same exhibits that Dr. McMillan reviewed.[69] If a non-examining physician relies on the same clinical findings of a treating or examining physician, and differs only in his conclusion, the non-examining physician's opinion is not substantial evidence. *Orn*, 495 F.3d at 632. In rejecting Dr.

---

[65] Pl.'s Br. – ECF No. 24 at 15–19.

[66] AR 2304–06.

[67] AR 2303.

[68] AR 3297 (testimony about the plaintiff's ventral hernia, chronic pain, and history of abdominal surgeries arising from an initial bariatric surgery).

[69] Pl.'s Br. – ECF No. 24 at 11 (citing Exs. 1F, 6F p.192, 7F p.35, 26F p.31 & AR 1072).

1   McMillan's finding, the ALJ noted the lack of imaging studies and positive neurological findings

2   without explaining why they matter. Also, the plaintiff had two surgeries, one for hernia repair in

3   March 2015 and one for repair of an intestinal perforation in December 2016.[70] The ALJ did not

4   address how these affected Dr. Bradus's and Dr. Morgan's opinions about the RFC to conduct

5   light work. Most of the evidence — including Dr. McMillan's assessment — supported the light-

6   lifting limitation. The ALJ did not provide specific and legitimate reasons supported by substantial

7   evidence in the record for rejecting Dr. McMillan's findings. *Lester*, 81 F.3d at 830–31.

8

9   **2.  The Plaintiff's Testimony**

10      On February 2, 2002, the plaintiff weighed 289.4 pounds. By December 9, 2013, she weighed

11  197 pounds.[71] At the disability-hearing officer's hearing in 2013, the plaintiff explained her

12  chronic pain, the limited utility of medications, her crying spells, and her inability to do chores and

13  work.[72] At the 2016 hearing, she described her pain in her abdomen and legs, her weakness and

14  lack of energy (despite treatment for anemia), her inability to work, and her need to lie down for

15  weeks at a time.[73] At the 2018 hearing, she described how pain from her knees and stomach

16  prevented her from working, how her weakness sometimes prevented her from brushing her hair

17  or teeth, and how she went to the gym only to walk slowly and use the bicycle because it helped

18  with her stomach pain.[74] At the 2019 hearing, she explained that in 2015, she could lift five

19  pounds, her son had to help with all the chores, she spent a good amount of time in bed, and she

20  struggled with pain in her back, foot, and stomach.[75] The ALJ did not address any of this

21  testimony explicitly.

22

23

---

24  [70] *Id.* (citing AR 1192–93, 8330–31).

25  [71] AR 372, 2464.

26  [72] AR 128.

27  [73] AR 59–62.

    [74] AR 13595, 13598–99.

28  [75] AR 13579.

United States District Court
Northern District of California

1    In assessing a claimant's credibility, an ALJ must make two determinations. *Molina v. Astrue*,

2    674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has

3    presented] objective medical evidence of an underlying impairment which could reasonably be

4    expected to produce the pain or other symptoms alleged." *Id.* (cleaned up); *see also* 20 C.F.R. §

5    404.1520(a). Second, if the claimant produces that evidence, and there is no evidence of malingering,

6    the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony

7    regarding the severity of her symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

8    "The ALJ must state specifically which symptom testimony is not credible and what facts in

9    the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996);

10   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (the ALJ must

11   explain his reasoning, and "[g]eneral findings are insufficient"). "Factors that an ALJ may

12   consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in

13   testimony or between testimony and conduct, daily activities, and unexplained, or inadequately

14   explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at

15   636 (cleaned up); *see also* 20 C.F.R. § 416.929. The court will "review only the reasons provided

16   by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he

17   did not rely." *Garrison*, 759 F.3d at 1010.

18   Here, the ALJ found that the plaintiff's "medically determinable impairments could have

19   reasonably be expected to cause the alleged symptoms" at step one but discounted her symptom

20   testimony at step two because the symptoms were not consistent with the medical and other

21   evidence.[76] The court remands on this ground because the ALJ did not identify what symptom

22   testimony was not credible. *Smolen*, 80 F.3d at 1284. His rejection of the testimony was

23   boilerplate. His characterization of the plaintiff's improvement for anemia seemingly was selective

24   citation to medical evidence, which is error.[77] *Orn*, 495 F.3d at 630. Also, his ground for rejecting

25   it — the other medical evidence — was not a specific and legitimate reason to reject Dr.

26

27   [76] AR 2302.

28   [77] Pl.'s Br. – ECF No. 24 at 16 (anemia based on hemoglobin of less than 10.0g/dL shown in AR 1695, 1744, 1805, 1843, 1931).

1    McMillan's findings, and it is not a specific, clear, and convincing reason to reject the plaintiff's

2    testimony regarding the severity of her symptoms. *Molina*, 674 F.3d at 1112. The ALJ's general

3    reference to inconsistency with "objective medical and other evidence" is insufficient, as it does

4    not link specific testimony to contradictory evidence. *See Treichler*, 775 F.3d at 1103.

5

6    **3.  Remand**

7        The plaintiff contends that this court should remand with the instruction for immediate

8    payment of benefits.[78] The court remands for further proceedings.

9        Ordinarily, "[i]f additional proceedings can remedy defects in the original proceeding, a social

10   security case should be remanded." *Garrison*, 759 F.3d at 1019. The language of the "Social

11   Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a

12   decision by the Commissioner 'with or *without* remanding the cause for rehearing.'" *Id.* (citing 42

13   U.S.C. § 405(g)). The court remands here because "it is not clear from the record that an [ALJ]

14   would be required to find the [plaintiff] disabled and award disability benefits." *Bunnell v.*

15   *Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003).

16

17                                        **CONCLUSION**

18       The court remands the case for further proceedings consistent with this order, including (1)

19   reevaluating the weight given to all medical opinions, including Dr. McMillan's, providing

20   specific and legitimate reasons for any discounting, (2) reassessing the plaintiff's testimony,

21   articulating clear and convincing reasons for any adverse credibility finding, and (3) conducting

22   any further proceedings as necessary.

23       **IT IS SO ORDERED.**

24       Dated: August 21, 2025

25
                                                        _____
26                                                      LAUREL BEELER
                                                        United States Magistrate Judge
27

28   _____
     [78] *Id.* at 18–19.

United States District Court
Northern District of California